Nicholson, C. J.,
delivered the opinion of the Court.
The question of law in these cases arises upon the following agreed state of facts:—
*389 Dobbins, Pleasants & Co., commission merchants at New Orleans, purchased from Galbreath & Putnam, ¡grocers at New Orleans, a bill of groceries amounting to $1,454. The groceries were bought by Clark, representing Dobbins, Pleasants & Co., who directed Gal-breath & Putnam to ship them to Aydlett, Robinson -& Co., at Memphis, and to send the bill to Dobbins, Pleasants & Co., for payment. Accordingly, Galbreath & Putnam shipped the groceries to Aydlett, Robinson -& Co., using the name of Dobbins, Pleasants & Co., as shippers, as appears by the bill of lading. This was done in pursuance of the directions of Clark, and in accordance with a custom at New Orleans in such cases.
On the next day, Galbreath & Putnam presented 'their bill of the groceries to Dobbins, Pleasants & Co. for payment, but it was not paid — they having failed after the sale and shipment of the goods, but which was not known by Galbreath & Putnam until the bill was presented.
They telegraphed to their agent, A; B. Treadwell, at Memphis, who sued out a writ of replevin against the steamer Lizzie Gill, on which the goods were shipped, and by the sheriff took possession of the groceries on their arrival, before they had reached the possession of Aydlett, Robinson & Co., and before the bill of lading was receiyed by them. It was agreed that Dobbins, Pleasants & Co. had money in their possession, belonging to Aydlett, Robinson & Co., but how much does not appear; nor was this fact made known to Galbreath & Putnam, who had no dealings 'with Aydlett, Robinson & Co. in the matter.
*390 These facts were submitted to the court — a jury being waived — on which the circuit judge held, that Galbreath & Putnam had no right of stoppage in tran-situ, and gave judgment in favor of Aydlett, Robinson & Co., from which Treadwell, agent of Galbreath & Putnam, has appealed.
It was insisted for Galbreath & Putnam, that they were entitled, as against Dobbins, Pleasants & Co., the-insolvent purchasers of the groceries, to stop them before they reached the actual possession of Aydlett, Robinson & Co., to whom they were consigned by Dobbins, Pleasants & Co. This would certainly be so, if Aydlett, Robinson & Co. had been the purchasers,, and had been insolvent. But upon the agreed case, Galbreath & Putnam had nothing to do with Aydleit, Robinson & Co. in the transaction, did not look to them for payment, but it is expressly agreed that the groceries were sold to Dobbins, Pleasants & Co., and they alone were looked to for payment.
The question must, therefore, necessarily turn upon, the fact of the delivery to Dobbins, Pleasants & Co.,, to whom the groceries were sold. The transit is held to continue from the time the vendor parts with the possession, until the purchaser acquires it; that is to say, from the time when the vendor has so far made delivery, that his right of retaining the goods, and his right of lien, are gone, to the time when the goods, have reached the actual possession of the buyer: Benjamin on Sales, 634.
The transitu of the goods, and consequently the-right of stoppage, is determined by the actual delivery *391 to the vendee, or by the circumstances which are equivalent to actual delivery: 2 Kent, 544. There are cases in which a constructive delivery will, and others in which it will not, destroy the right of stoppage. Mr. Kent says: “ there has been much subtlety and refinement on the question, as to the facts and circumstances which would amount to a delivery sufficient to take away the right. The point of inquiry is, whether the property is to be considered still in its-transit; for if it has once fairly arrived at its destination, so as to give the vendee the actual exercise of dominion and ownership over it, the right is gone: Kent, 546.
In the case before us, therefore, the inquiry is, Did Dobbins,' Pleasants & Co. have the actual exercise of dominion and ownership over the groceries, after they were purchased ? It is obvious that they did not purchase them for themselves, but to be sent to Aydlett, Robinson & Co., at Memphis. Yet Aydlett, Robinson & Co. are not known to Galbreath & Putnam in the transaction. If the goods had been carried from the house of Galbreath & Putnam to that of Dobbins,. Pleasants & Co., and there delivered, that would clearly have placed them under the dominion and control of' Dobbins, Pleasants & Co., and would have put an end to the right of stoppage. If Dobbins, Pleasants & Co. had then shipped the goods to Aydlett, Robinson & Co.,, 'at Memphis, there could be no pretense for claiming the right of stoppage. Instead, however, of taking the circuitous course, Dobbins, Pleasants & Co. directed Galbreath & Putnam to ship the goods to Aydlett, *392 Robinson & Co., at Memphis, and to ship them in the name of Dobbins, Pleasants & Co., as consignors; and accordingly this direction is followed, and the goods shipped, with a bill of lading, in the name of Dobbins, Pleasants & Co., as thfe consignors. This was a dear and unmistakable exercise of dominion and ownership of the goods, which is wholly inconsistent with any right of stoppage on the part of Galbreath & Putnam ; when they took the bill of lading in the name of Dobbins, Pleasants & Co., and shipped the goods according to their directions to Aydlett, Robinson & Co., they expressly recognized the right of Dobbins, Pleas-ants & Co. to control them as owners, and their right to consign them to Aydlett, Robinson & Co., and to vest the title of the goods in them, by sending along the bill of lading by which the property in the goods was transferred to the consignees.
Upon these facts and circumstances we are of opinion, that the Circuit Judge held correctly that Gal-breath & Putnam had not the right of stoppage in transitu, and we affirm the judgment.